### GOULD PAPER CO. v. FRANK et al.

(Supreme Court, Appellate Division, First Department. March 10, 1899.)

FRAUDULENT CONVEYANCES—EVIDENCE.

In an action to set aside a bill of sale and a mortgage, defendant grantor claimed that it had been given to secure a debt owing by him to the defendant grantee. The evidence of the parties was contradictory and vague as to the time when the indebtedness was created, and, though defendant grantor testified that he always gave notes and received some loans by checks, no notes or checks were produced when asked for; neither did the grantee keep any stubs or vouchers. It was also shown that, after the bill of sale and mortgage were on their face executed, the grantor offered to transfer the very property to another to avoid paying certain of his creditors, dealing with it as his own. *Held* sufficient to justify a finding that the conveyance was fraudulent.

Appeal from special term, New York county.

Action by the Gould Paper Company against Peter Frank and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Joseph A. Arnold, for appellant.

Max D. Steuer, for respondents.

O'BRIEN, J.    This suit in equity was brought to set aside, for fraud and want of consideration, a bill of sale of personal property and a mortgage on realty, executed on the 31st day of May, 1895, by the defendant Frank to the defendant Silverman, and to have a receiver appointed and an accounting for the firm of Gilman & Frank, which was dissolved on May 2, 1895.    The plaintiff is a creditor of the firm, and on December 19, 1895, recovered a judgment against it, upon which an execution was duly entered, which was returned wholly unsatisfied.    The defendant Gilman did not answer, but the defendants Frank and Silverman deny that the transfers mentioned were made with intent to hinder or defraud creditors, and assert that the consideration therefor was an indebtedness existing prior to the formation of the partnership.

From the evidence presented at the trial, the judge below concluded that the burden of proof placed on the plaintiff had not been sustained, holding that the transactions between Frank and Silverman were bona fide.    The appellant contends that this conclusion, which resulted in the dismissal of the complaint, was against the weight of evidence.    To determine the question of fact thus presented, as to whether there is a preponderance of evidence showing fraud in the execution of the mortgage and bill of sale, a review and consideration of the entire record is necessary, and for the purposes of this opinion we may summarize the leading points.

The defendants Gilman and Frank, on January 14, 1895, at the house of the defendant Silverman, entered into a partnership in the paper-jobbing business, to which Frank contributed $6,000, the partnership assuming Gilman's existing indebtedness.    On May 2, 1895, the partnership was dissolved, Frank receiving, by the articles of dissolution, firm assets to the extent of $5,213.78.    Thereafter Gilman and Frank carried on business separately, and about a month later Gilman made a general assignment.    On May 31st, just previous to this assignment, Frank made to Silverman a bill of sale of the personalty he had received at the partnership dissolution, for the expressed consideration of $4,000; retaining, however, the nominal possession thereof and purporting to act as manager for Silverman. At this time Frank also gave to Silverman a mortgage on certain realty for $2,000.    The defendants Frank and Silverman claim that the consideration in these transfers, which amounts to $6,000, was a debt of $6,000 owing by Frank to Silverman, $5,400 of which existed prior to the formation of the partnership, and the remaining $600 of which was received by Frank from Silverman at the time the partnership was entered into.    The plaintiff says that this statement is false; that there was no indebtedness prior to the partnership which was a consideration for the transfers; and alleges that the instruments were made to hinder and defraud creditors of the firm.

The testimony of the defendants, in answer to the charge of fraud

and in support of their assertion, is conflicting and unsatisfactory. There is nothing to show a debt of $5,400 prior to January 14th, other than their own testimony. Neither defendant is able to state the amounts of which such debt was composed, or the time of the alleged loans; and, although Frank testified that he always gave notes and received some loans by check, no such notes or checks were produced when asked for. Silverman testified that it was his practice to destroy his check books; that he made no memoranda, and had no stubs or vouchers; and that he had no record whereby he could point out any one loan he ever made to Frank, although such loans, he said, extended over some 8 or 10 years. Frank testified that all of the $5,400 was due 10 or 12 years before January 14, 1895, while Silverman's testimony is that $2,400 of it was advanced during the year previous thereto. In affidavits made by the defendants in supplementary proceedings brought by creditors against the partnership other contradictions appear. Silverman swore, in such proceedings brought by the Watertown Paper Company in July, 1895, that he offered to advance to Frank a sum sufficient to enable him to go into partnership with Gilman, and did advance him the sum of $6,000; that the business did not prosper, and, seeing that the object for which he had advanced the money had failed, he made a demand for its return, and it was agreed that Frank should sell him his business. This statement is not in accord with the defense made in this case, that $5,400 of the $6,000 was a debt of some time standing, and that $600 was advanced for partnership purposes. To show the alleged prior indebtedness of $6,000, the defendants offered in evidence on the trial three notes to Silverman, signed by Gilman & Frank, for $1,500, $2,000, and $2,500, dated January 24, February 21, and March 23, 1895, respectively, which are alleged to have been given as collateral security for the $6,000 debt due Silverman on January 14th. No explanation is made why the notes are not of even date. The defendants testify that there was another note made for $6,000, representing the original liability, given January 14th, from Frank to Silverman, which note had been destroyed. Under such circumstances, collateral security would be of little use.

In contradiction of the conflicting and improbable character of the statements made by the defendants, and the questionable quality of the proof they present, we have the positive testimony in behalf of the plaintiff which impeaches the verity of the transactions attacked by the complaint. Mr. Herring, a representative of the Jefferson Paper Company, also a creditor of the partnership, testified that at an interview with Frank, just after Gilman's assignment, he was requested to take a transfer of Frank's property in order to enable Frank to avoid paying Gilman's debts and that Frank might continue business. The effect of such testimony is plain. The bill of sale and mortgage were on their face executed 10 days before, for an alleged debt. Yet we have Frank offering to transfer the very property to another to avoid paying certain of his creditors. He dealt with the property as his own, nothing being said about having Silverman convey it. Steuer, Frank's attorney, does not deny Herring's story of this conversation. Frank denies that he wanted to transfer to Herring, but

says in the same breath that he cannot remember what was said. It is evident that Frank's request to Herring was with a view to making a disposition of the property similar to that which the plaintiff claims was made between Frank and Silverman by the bill of sale and mortgage dated May 31st. Mr. Herring further testified that at this interview he saw a note made by Silverman for $2,000, the amount of the mortgage. All this testimony, the appellant urges, goes to show that the transfers were not real, and that, to offset the mortgage nominally passed, Frank held a note for $2,000 while he retained possession of the personalty. The existence of a note for $2,000 was denied by Frank.

As stated, after the dissolution of the partnership, Frank had conducted business on his own account, and two days before the sale was made to Silverman he had ordered goods of the Watertown Paper Company. On June 6th he changed the order by the announcement that he was no longer in business for himself, but as manager for Silverman. In this connection, it appears that Frank, on June 3d, drew $515 out of his bank, not openly, but by exchange checks with one Norz, who testified directly to the fact; and a week later he deposited $750, mostly in bills, in the name of "Peter Frank, Manager." This circumstance seems to be in line with the plaintiff's charge that Frank was endeavoring to avoid paying partnership debts. On June 8th, the Watertown Company wrote with regard to payment for the goods ordered, and Frank replied, saying he had lost $3,000 with Gilman, as well as his name, but, "if business continues, I will try my utmost to regain my name." These words indicate that Frank was in reality in business on his own account; they are also false, as Frank lost very little money. The Watertown Company sent its representative, Mr. Remington, to New York, to recover debts due from the old firm of Gilman & Frank; and Mr. Remington testified that, in conversation had with a view to determining Frank's credit, Silverman stated to him that Frank was worth $7,000, and, furthermore, that the bill of sale and mortgage were of no moment, but were given because of some trouble between Frank and his partner, Gilman. To meet this very damaging testimony against them, the defendants do not attempt any explanation, but content themselves with a mere denial.

It further appears that the defendants' allegation that $600 was advanced as a loan to Frank by Silverman, on January 14, 1895, is closely brought in question. A clerk of Silverman's bank testified that on that date Silverman deposited a check for $600 drawn by Frank, and the teller of the bank where Frank had an account testified that a check for $600 was returned at that time. This testimony is almost conclusive that merely exchange checks were given, although the defendants' attorney attempts to show that two checks might have been made by Silverman on that day, one to Frank and the other given to Gilman. Gilman testified that he received a check from Silverman on that day, but this alone is no answer to the charge of exchange checks.

The testimony of Gilman that, "when Frank went into partnership with me, I told him I was insolvent," is very detrimental to the

defendants.　The only reply made in this instance also is a denial; Frank stating that he did not discover the condition of insolvency till some time after the formation of the partnership, and then made every effort to get out.　According to Frank's own testimony, his reason for uniting with Gilman was the extent of the latter's credit, and the partnership agreement permitted Frank to dissolve the firm at any time.　Gilman's explanation that the three notes mentioned were given to secure Frank, through Silverman, for the capital contributed, is also more to be believed than the defendants' statement of prior indebtedness.

The defendants attempt to show that the dissolution was brought about by suggestion of a Mr. Felch, who represented the National Paper-Bag Company at a meeting of the firm's creditors, and claim that Mr. Felch then acted also for the plaintiff; but we do not think the contention is of any moment.

In view of the testimony and proof presented by the plaintiff, we are of the opinion that the learned trial judge erred in dismissing the complaint, and that the quality and weight of the evidence adduced was in the plaintiff's favor.　The testimony of the defendants is not only fraught with suspicion, but is of such a contradictory nature, and fails, at such important points,—such as the failure to produce books, notes, or vouchers,—to answer the charge of the plaintiff, that, when we consider the positive testimony on the other side, we think that the burden placed on the plaintiff of showing fraud by a preponderance of evidence was fairly sustained.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.　All concur.